UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WILLIAM J. PREAU, III                                          CIVIL ACTION

VERSUS                                                          No. 09-4252

ST. PAUL FIRE & MARINE INSURANCE                               SECTION I/3
COMPANY


### ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by plaintiff, William J. Preau ("Preau"),[1] and a motion for summary judgment filed by defendant, St. Paul Fire & Marine Insurance Company ("St. Paul").[2] For the following reasons, the motions are **DENIED**.

### *BACKGROUND*

Beginning in the year 2000, Preau was a member of Lakeview Anesthesia Associates ("LAA"), an anesthesia practice group at Lakeview Medical Center ("LMC"). One of the other members of LAA was an anesthesiologist named Robert Lee Berry ("Dr. Berry"). On March 27, 2001, LAA terminated Dr. Berry's employment "with cause." In a letter signed by all of the members of LAA, including Preau, LAA stated, "As we have discussed on several occasions, you have reported to work in an impaired physical, mental, and emotional state. Your impaired condition has prevented you from properly performing your duties and puts our patients at significant risk."[3]

Notwithstanding this termination letter, on June 3, 2001, Preau wrote a letter of recommendation for Dr. Berry wherein Preau described Dr. Berry as "an excellent

---
[1] R. Doc. No. 24.
[2] R. Doc. No. 25.
[3] R. Doc. No. 27-1.

1

anesthesiologist" whom Preau recommended "highly."[4] In part because of this letter, Dr. Berry began working as an anesthesiologist at Kadlec Medical Center ("KMC"). Tragically, while working at KMC on November 12, 2002, Dr. Berry allegedly caused a patient, Kim Jones, to suffer extensive brain damage by practicing medicine while under the influence of drugs.[5]

Ms. Jones's family brought a medical malpractice lawsuit ("the Jones' litigation") against Dr. Berry and KMC, which KMC settled for 7.5 million dollars. In turn, KMC and its insurer sued LAA, the individual members of LAA, including Preau, and LMC asserting claims for intentional misrepresentation, negligent misrepresentation, strict responsibility misrepresentation, and negligence.[6]

Following a jury trial, on May 26, 2006, the jury found Preau and other defendants liable for intentional misrepresentation and negligent misrepresentation.[7] Preau alleges that, as a result of the *Kadlec* litigation, he personally paid KMC $758.630.05.[8] On May 29, 2009, Preau filed a lawsuit against St. Paul alleging that St. Paul "had in effect a policy of insurance insuring [Preau] against this risk."[9] Preau sought to recover the full amount he paid to KMC as well as statutory damages and attorney's fees.[10]

In March, 2010, the parties filed cross-motions for summary judgment.[11] St. Paul argues that several provisions of the policy either exclude coverage or demonstrate that no coverage ever existed. Specifically, St. Paul argues that coverage is excluded because: (1) KMC's injury was a purely financial injury and, accordingly, it is not covered by the policy; (2) the policy

---

[4] R. Doc. No. 27-2.
[5] *See Kadlec Medical Center v. Lakeview Anesthesia Associates*, Civil Action No. 04-997, R. Doc. No. 1, paras. 28-32.
[6] *Kadlec Medical Center v. Lakeview Anesthesia Associates*, Civil Action No. 04-997, R. Doc. No. 1.
[7] *Kadlec Medical Center v. Lakeview Anesthesia Associates*, Civil Action No. 04-997, R. Doc. No. 353-2.
[8] R. Doc. No. 1-1, para. 10.
[9] R. Doc. No. 1-1, para. 6.
[10] R. Doc. No. 1-1, para. 12.
[11] R. Doc. Nos. 24, 25.

excludes coverage for intentional torts; (3) Preau was not a protected person under the policy; (4) the health care professional services exclusion applies; and (5) Preau did not comply with the policy's notice requirement. Preau contends that his claim is covered under the policy and, as such, St. Paul is liable for the payments he made to KMC.

*STANDARD OF LAW*

**I.      Summary Judgment Standard**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

3

(citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II. Interpretation of Louisiana Insurance Contracts

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.")(citing La. Civ. Code art. 2045).[12] "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998))(internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

---

[12] The parties do not dispute that Louisiana law applies to the insurance policy at issue in this case.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003). A court should not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); *accord Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La. 1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La. 1994). If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.'" *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989)("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

While the insured bears the burden of proving the existence of the policy and coverage, *i.e.* the "requirements" for coverage, *Tunstall v. Stierwald*, 809 So.2d 916, 921 (La. 2002)(citing

5

*Collins v. New Orleans Pub. Serv., Inc.*, 234 So.2d 270 (La.App. 4 Cir. 1970)), the insurer bears the burden of proving the existence of policy limits or exclusions. *Tunstall*, 809 So.2d at 921 (citing *Mass. Protective Ass'n v. Ferguson*, 168 La 271, 121 So. 863 (La. 1929)).

## *DISCUSSION*

### I. Financial v. bodily injury

St. Paul argues that Preau is not entitled to coverage under the policy because he seeks to recover for a "financial injury" that is not a covered loss.[13] The policy provides:

> **Bodily injury and property damage liability.**
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
> - happens while this agreement is in effect; and
> - is caused by an event.[14]

A bodily injury is defined as "any physical harm, including sickness or disease, to the physical health of other persons."[15]

St. Paul argues that this Court and the Fifth Circuit[16] have found that the *Kadlec* litigation involved a financial injury rather than a bodily injury. Indeed, during the *Kadlec* litigation, this Court wrote:

> [KMC] seek[s] recovery not for the defendants' role as a tortfeasor in the Jones' lawsuit, but for the defendants' alleged breach of independent duties owed [KMC], e.g., the duty not to communicate misleading, incomplete, or incorrect information to [KMC].
> Notwithstanding the fact that [KMC] quantif[ies] [its] damages in a way which resembles the amount paid to settle the Jones' lawsuit plus costs, [KMC's] damages are alleged to be the monetary losses to [KMC] arising from defendants' acts of negligence and negligent misrepresentations. As plead, [KMC's]

---

[13] R. Doc. No. 25-4, p. 8.
[14] R. Doc. No. 27-5, p. 45.
[15] R. Doc. No. 27-5, p. 45.
[16] The Fifth Circuit wrote that "[a]s a result of [defendants'] misrepresentations, plaintiffs suffered a foreseeable financial injury in excess of $8 million. *Kadlec Med. Ctr. v. Lakeview Anesthesia Associates*, 527 F.3d 412, 425 (5th Cir. 2008).

6

negligence-based causes of action against defendants are based on the defendants' independent acts directed at [KMC].[17]

Nevertheless, while the Court found that KMC had an independent cause of action against Preau—an opinion that does not foreclose the possibility that the Jones' plaintiffs also had a cause of action against Preau—the fact remains that Preau paid damages to KMC, at least in part, because of the bodily injury to Kim Jones.

St. Paul's argument ignores the fact that the policy language does not limit coverage to bodily injuries *caused* by Preau. Rather, the policy provides coverage for damages for which Preau becomes "legally required to pay as damages for covered bodily injury." As noted above, it cannot be disputed that the majority of Preau's damages to KMC resulted from the bodily injury to Kim Jones.[18] Although Preau was not found directly liable to Kim Jones,[19] Preau did become responsible to pay because of a "physical harm . . . to the physical health of other persons."[20]

Even if St. Paul could create some doubt as to the meaning of the phrase "covered bodily injury" such doubt does not preclude a judgment in favor of Preau. The Court finds that, at best, the phrase "covered bodily injury" is ambiguous. Louisiana law requires that "[i]n the case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code art. 2056. St. Paul provided the text of this contract

---

[17] Civil Action No. 04-997, R. Doc. No. 140, pp. 8-9.
[18] The Court notes, however, that to the extent Preau's liability to KMC was based on attorney's fees and the cost of defense, such damages would not be recoverable as they do not constitute "damages for covered bodily injury."
[19] As plaintiff correctly notes, St. Paul's position would condition coverage on the basis of whether the Jones' plaintiffs chose to sue Preau in the original litigation. *See* R. Doc. No. 24-1, pp. 21-22. As noted above, if ambiguity exists in an insurance contract, a court should "construe the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (internal quotations omitted). The Court is persuaded that no reasonable party would expect coverage to turn on the procedural posture of any claims against the insured.
[20] *See* R. Doc. No. 27-5, p. 45.

and, accordingly, any doubt in its interpretation must be resolved against St. Paul and in favor of coverage. *See Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764.

## II. Intentional tort exclusion

St. Paul argues that the policy contains an exclusion for intentional torts. The policy reads:

> **Expected or intended bodily injury or property damage.** We won't cover bodily injury or property damage that's expected or intended by the protected person. Nor will we cover medical expenses that result from such bodily injury.[21]

St. Paul contends that this language excludes coverage in this matter because Preau was found liable for intentional misrepresentation.[22]

The Louisiana Supreme Court has had multiple opportunities to interpret intentional tort exclusions in insurance contracts. *See Yount v. Maisano*, 627 So.2d 148 (La. 1994); *Great American Ins. Co. v. Gaspard*, 608 So.2d 981 (La. 1992); *Breland v. Schilling*, 550 So.2d 609 (La. 1989). "The phrase 'bodily injury . . . which is expected or intended,' emphasizes that an excluded injury is one which the insured *intended*, not one which the insured *caused*, however intentional the injury producing act." *Breland*, 550 So.2d at 611 (emphasis in original). "The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional." *Gaspard*, 608 So.2d at 985.

The key test is whether at the time the insured acted, he intended the harm that resulted or had a subjective belief that such a result was certain or substantially certain to follow. *See Gaspard*, 608 So.2d at 986. "The insured's subjective intent or expectation must be determined not only from the insured's words before, at the time of, and after the pertinent conduct, but from

---

[21] R. Doc. No. 27-5, p. 56.
[22] R. Doc. No. 25-4, p. 15.

8

all the facts and circumstances bearing on such intent or expectation." *Id.* (quoting *Breland*, 550 So.2d at 615).

St. Paul argues that once Preau wrote the letter of recommendation for Dr. Berry, "significant harm was not only expected, it was inevitable."[23] St. Paul points to the termination letter signed by Preau that states, "Your impaired condition has prevented you from properly performing your duties and puts our patients at significant risk."[24] St. Paul analogizes this case to *Gaspard*, where the Louisiana Supreme Court found that the facts and circumstances surrounding an attempted arson were such that the insured "either intended to cause damage to the building and the property of others surrounding him or knew that such damage was substantially certain to follow." *Gaspard*, 608 So.2d at 986.

Such comparison, however, is overly simplistic. Preau submitted an affidavit in this matter stating, "The thought that my letter could cause harm to anyone did not occur to me, and I certainly did not consciously desire harm to come to anyone."[25] Such affidavit is supported by Preau's deposition in the Jones' litigation.[26] Preau testified that he had worked with Dr. Berry for "several years, and he did not have problems at all with patients."[27] He further testified that he believed Dr. Berry "made one mistake" but that Preau still trusted him and "didn't think he was at all dangerous to the public."[28]

At the moment Preau wrote the letter, he was weighing an incident that was, in his mind, an isolated occurrence against his extensive professional history with Dr. Berry. Unlike the arsonist in *Gaspard*, it is not at all clear that Preau had a subjective belief that the injury to Kim Jones, or any injury at all, "was substantially certain to follow." The Court believes, however,

---

[23] R. Doc. No. 25-4, p. 16.
[24] R. Doc. No. 27-1.
[25] R. Doc. No. 24-3, p. 2.
[26] R. Doc. No. 27-6.
[27] R. Doc. No. 27-6, p. 14.
[28] R. Doc. No. 27-6, pp. 18, 27.

that Preau's signing of Dr. Berry's termination letter creates a genuine issue of material of fact with respect to whether Preau had a subjective belief of the risk posed by Dr. Berry. Accordingly, Preau's motion for summary judgment must be denied.[29]

### III. Whether Preau is a "protected person"

St. Paul argues that Preau is not a "protected person" under the policy because his letter of recommendation with respect to Dr. Berry was not "in connection with any duty as a director, trustee, executive officer," nor was it done "within the scope of his employment with LAA, or in the performance of any duty related to the conduct of LAA."[30]

St. Paul's argument, however, stands in direct opposition to the jury's findings in the *Kadlec* litigation. Jury Interrogatory No. 2 asked the jury:

> Do you find from a preponderance of the evidence that the acts or omissions related to any intentional misrepresentations made by Dr. Dennis or Dr. Preau were performed within the course and scope of his employment with Lakeview Anesthesia Associates?[31]

With respect to both Preau and Dr. Dennis, the jury answered "yes."[32] St. Paul concedes that the *Kadlec* judgment is binding on this Court.[33] Because the *Kadlec* judgment is binding on this Court, St. Paul's argument that Preau was not a protected person because he was acting outside the course and scope of his employment must be rejected.

---

[29] St. Paul also argues that the "false material" policy exclusion precludes coverage in this case. R. Doc. No. 25-4, p. 16. Such argument is at odds with the plain language of the policy. The exclusion is expressly limited to a "personal or advertising injury." R. Doc. No. 27-5, p. 56. The policy defines "personal injury" as "injury, other than bodily injury or advertising injury." R. Doc. No. 27-5, p. 45. "Advertising injury" is defined as "injury, other than bodily injury or personal injury." R. Doc. No. 27-5, p. 46. As noted above, the injury to Kim Jones is a "bodily injury" under the policy. *See* Section I, *supra*. Because the injury to Kim Jones is a bodily injury, the "false material" policy exclusion does not apply.
[30] R. Doc. No. 25-4, p. 18.
[31] Civil Action No. 04-997, R. Doc. No. 353-2, pp. 1-2.
[32] Civil Action No. 04-997, R. Doc. No. 353-2, p. 2. The jury also specifically found that Preau made negligent misrepresentations in the course and scope of his employment with LAA. *Id.* at p. 3.
[33] R. Doc. No. 39, p. 1 ("[T]his Court has to be bound by the *Kadlec* judgment because that judgment is the single and entire basis upon which plaintiff, Dr. Preau, has brought the pending lawsuit."). St. Paul also stated that "St. Paul must strongly emphasize that it is not seeking to reopen the factual or legal basis of the prior *Kadlec* judgment." R. Doc. No. 39, p. 2.

## IV. Health care professional services exclusion

St. Paul's next argument is that the policy's health care professional services exclusion precludes coverage.[34] That exclusion provides:

> **Health care professional services.** We won't cover injury or damage or medical expenses that result from the performance of or failure to perform health care professional services.[35]

In relevant part, health care professional services includes "evaluating or responding to an evaluation of the professional qualifications or clinical performance of any provider of health care professional services, when done by or for any of your formal review boards or committees."[36]

St. Paul's argument with respect to the health care professional services exclusion is based entirely on a misquotation of the policy. St. Paul argues that the letter of recommendation "clearly and unequivocally" pertained to an evaluation of the professional qualifications or clinical performance of Dr. Berry and that such letter was "clearly and unequivocally done by Dr. Preau for **a** formal review committee, i.e. the hiring committee of Kadlec hospital."[37] St. Paul ignores, however, that the policy clearly states "when done by or for any of **your** formal review boards or committees."[38]

The very first page of the policy defines the word "your" to mean "the insured named here."[39] That insured is Lakeview Anesthesia Associates, Inc.[40] Accordingly, the plain language of the policy only excludes coverage for evaluations done by or for LAA formal review boards

---

[34] R. Doc. No. 25-4, p. 18.
[35] R. Doc. No. 27-5, p. 56.
[36] R. Doc. No. 27-5, p. 56.
[37] R. Doc. No. 25-4, p. 19 (emphasis added).
[38] R. Doc. No. 27-5, p. 56 (emphasis added).
[39] R. Doc. No. 27-5, p. 1.
[40] R. Doc. No. 27-5, p. 1.

11

or committees. St. Paul has presented no evidence that the evaluation was done by, or for, LAA review boards or committees. Indeed, its motion for summary judgment consistently refers to KMC review boards or committees. Because the plain language of the policy exclusion does not apply to the facts of this case, St. Paul's argument with respect to the health care professional services exclusion must also be rejected.

## V. Notice

St. Paul's final argument is that coverage should be denied because Preau failed to notify St. Paul about the Jones' litigation.[41] "Under Louisiana law, the insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable. Rather, to deny coverage on the basis that it did not receive notice as stipulated in the policy, the insurer must show actual prejudice." *Peavy Co. v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir. 1992)(internal citations and quotations omitted). "Louisiana's rule of requiring proof of actual prejudice aims to prevent insurers from avoiding their contractual obligations and thus to assure payment of liability claims up to the policy limits." *Id.*

St. Paul contends that it was prejudiced because it "never had the opportunity to examine or test any of the basis of any of the allegations made [in the Jones' litigation], including the allegations of negligence against Dr. Berry and the extent of damages claimed by the Jones' family."[42] As Preau correctly notes, however, the parties to the *Kadlec* litigation stipulated to the reasonableness of Jones' litigation's settlement as well as the amount of the settlement.[43]

---

[41] R. Doc. No. 25-4, p. 22.
[42] R. Doc. No. 25-4, p. 22.
[43] Civil Action No. 04-997, R. Doc. No. 252, p. 11.

The Court finds that St. Paul has not met its burden of demonstrating that it was actually prejudiced by any alleged failure by Preau to notify St. Paul about the Jones' litigation.[44] Based on the stipulation in the *Kadlec* litigation, as well as St. Paul's failure to even allege how they were prejudiced by their lack of notice of the Jones litigation,[45] the Court finds that St. Paul's arguments with respect to notice must be denied.

## *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that the motion for partial summary judgment filed by plaintiff is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendant is **DENIED**.

New Orleans, Louisiana, June 29, 2010.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[44] Because of this Court's opinion with respect to whether St. Paul has demonstrated actual prejudice, the Court does not reach the question of whether Preau should have provided notice.

[45] The Court notes that other than St. Paul's generalized allegations that they were denied the opportunity to examine or test any of the basis of the allegations and the extent of the damages, St. Paul does not allege how the outcome of the Jones' litigation might have been different had St. Paul been able to intervene.